Good morning, Your Honors. If it pleases the Court, I am Carlton Briggs, appearing for Appellant R.E.M. INTERNATIONAL. Here the case is rather narrow in terms of the issues. Both parties agree on the law and the documentary facts in this case. We both agree that in order to qualify for an H-1B visa, there has to be a qualifying job, and the beneficiary, Ms. Georgieva in this case, has to qualify for it under the applicable regulations. We also agree on the standards used under the regulation and on the standard of review of the agency action under the APR. I would like to direct the Court to what I feel is the flawed process that led to that first, the flawed process leading to the Neufeld decision, and, second, the flaws in the decision of the AAO. The process was flawed. The CISAAO admitted that there was no evidence in the record to support the initial reasons for revoking the visa. These are outlined in the CUNY Those initial reasons were that Georgieva was not qualified and that Jefferson wanted either a nanny or a paramour, not a computer-aided design specialist. Jefferson quite naturally responded to the allegations in the letter revoking the visa, since he believed that was all he had to refute. In his response, Jefferson demonstrated that the job was a specialty occupation, and I would direct the Court to the excerpts of record, page 17. He established that REM was established in 1994. It had an IRS employer identification number. That it designed solar energy converters. In this case, they're working on a prototype, which is why they wanted to bring Ms. Georgieva over for computer programming knowledge and also for her knowledge of technical Bulgarian. Mr. Jefferson, who founded REM, is a native Bulgarian and works better in that language. It has nine employees, four of whom had advanced degrees. Jefferson created the job, was offering the job, and stated its requirements. It would hardly be unusual for the kind of person needed to have to have an advanced degree. I mean, it's on a par with nuclear physics. It's not something that anybody can do. He also, Mr. Jefferson on behalf of REM, also did what he could to show her qualifications. He contacted Professor Nesterov at the University of Chicago to have them opine on her qualifications. Don't you know what they point out as the defects? Do you want to go right straight to that? Yes, Your Honor. Suddenly somebody from the University of Chicago said something that said something. But what they're saying is we don't know what he knows or what he doesn't know because he doesn't know anything about the job or the person. He's just giving us the difficulty here, isn't it? I don't know what the difficulty is. You know better than I do. But what I assume the difficulty is that there's been a finding that the person who was selected and was given a visa had no special qualifications and didn't know what requirements assumed she did know and so they revoked it. Isn't that what they did? Exactly. That's precisely what they did, Your Honor. They in essence held a secret proceeding. They called in an unnamed computer specialist at the embassy to evaluate her. They never told REM that that was going on. The AAO itself found that that entire procedure was improper and there was no proper evidence in the record to support the conclusion that Mr. Neufeld made. That's exactly what they did and they were wrong. Instead, what they should have done if they wanted more information is they could have asked for it. On Form I-129, there was a description of the job duties. Okay. If they wanted more information, the normal procedure is to return the form and ask for it. They didn't. There's no indication in the record or the briefs that any kind of fuller description of her job is required from REM. Then there was further information provided by Mr. Jefferson. Because it was clear they were saying Nesterov may not be enough. So he got the University of Toronto CES letter. Now, the CIS doesn't seem to go farther than just repeating what the AAO says, but Jefferson showed that the AAO decision is flawed. The letter says, and this is the University of Toronto CES letter, it's in Pelley's excerpts of record at page 75. Excuse me, Your Honor. And the description of what the AAO says about it is in the excerpts of record of the appellant, page 43. First, the letter shows it's from a university and that the assessment is for employment purposes. Second, the CIS admits that the decision used the wrong criteria in noting that the CES wasn't a foreign degree evaluation firm or authorized to grant college credit. That wasn't required. Next, Georgieva's diploma was in the record, as was her transcript. So the decision statement, the AAO decision statement that the accuracy couldn't be evaluated simply isn't true. The evidence is there in the record. Then with increasing desperation, you go to reasons three and four. Reason three is, well, the evaluator didn't reach a firm conclusion. Well, most evaluators don't, Your Honor. They can't. It's not cut in stone. All they can do is do their best to evaluate what they've got. And the letter says that they looked at the diploma, they looked at the transcript, they looked at all the information and the translations of it, and they made the determination. I suspect that a firm conclusion by University of Toronto CES would have been rejected equally strongly. Finally, reason four, they're saying that the UTCES didn't opine that Georgieva's degree was the equivalent of a U.S. degree, but instead used the term North American degree. It's hard for me to see the point of that at all. What REM is asking you to do is to look at the transcript. Now, we can go around and around and around about degrees and what they mean. But fundamentally, if I understand, and maybe I don't, there was an application submitted. It was originally granted. And then she had to show up for an interview. Is that correct? That's correct, Your Honor. And at the interview, it was concluded that she didn't have any special qualifications at all. And that's what set this in motion. And then we get a battle of diplomas. But fundamentally, it's pretty hard to say, okay, this is the what establishes that she has some qualification for a job that required those qualifications and it was arbitrary and capricious for anybody to conclude otherwise. Well, the AAO itself. Well, the AAO itself rejected the reasons given in the Cooney Memorandum on page 12 of the appellate's record. And justifiably so. The AAO found that, excerpt from record page 41, that it would accord no weight to the consular officer's speculation about the Petitioner's motivation about whether the preferred position actually exists. It describes it as conjecture. It rejects it completely. It says there is an absence of detail about the qualification of the consular officer's computer specialist and about the substance of the conversations. So the AAO has to discount the conclusions of that computer specialist. So far, it's reading absolutely great. Then they come down and they say, however, the citation of the consular officer's information was sufficient to put the Petitioner on notice that the approval of the Petitioner was questionable and that the Petitioner had the burden to establish that there was a proper factual basis for the petition. So they're taking something which is wrong, which is based on extra record evidence, which is conjecture, which they are properly rejecting, but they're saying that raises the bar for my client, R.E.M., in trying to get a visa for Ms. George-Ava. That's wrong. This isn't a question. This isn't a case where I'm asking this Court to come in and substitute its judgment for the agency. Rather, the agency clearly is rejecting an opportunity to correct its own mistake. It recognizes the mistake. It rejects the CUNY memorandum, but then it doesn't correct it. Instead, it raises the bar. It says, well, okay, we reject this. It's conjecture. It's totally unsupported by the record. But it raises the bar for you. It means you have to do more. That is improper. That's unfair. I'll save the rest for a ---- Just tell me once again, where is the rejection that you think is so ---- it's on page 41? It's page 13 of Appellant's opening brief. It is the excerpts of record, page 41, Your Honor. The AO has accorded no weight to the consular officer's speculations about petitioner's motivation and about whether the preferred position actually exists. The notice of revocation contains insufficient evidence to support these conjectures. The notice also lacks sufficient evidence to establish that the beneficiary's grades were below average as the basis of this conclusion was not cited. Indeed, the record shows the opposite. Likewise, in the absence of details about the qualifications of the consular officer's computer specialist and about the substance of his conversations, the AO discounted the conclusions of the computer specialist and the consular office about the extent of the beneficiary's computer knowledge. However, the citation of the consular office information was sufficient to put the petitioner on notice that the approval of the petition was questionable and that the petitioner had the burden to establish that there was a proper factual basis for the petition. Is that correct, that the rejection put her on notice and she had to establish a proper basis for the petition? The problem is that you're taking something which they say is improper and should be ignored, and that that, nevertheless, should increase the standard that REM has to meet. Okay. Thank you. That's the problem. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Sarah Winslow for Defendant Sapolis. It is true that the agency's final decision rejected the suspicions that the consular officer had expressed. But from the very beginning of the administrative process here, which began with the notice of intent to revoke on January 22, 2003, the agency told REM that it did not meet the requirements of the regulations to get the visa. There are two basic requirements here. One is that the job must be in a specialty occupation, and the second one is that the beneficiary, Ms. Georgieva here, must be qualified for that job. And from the very beginning, the agency told REM you are not meeting either of these requirements. It said that in the notice of intent to revoke, it said that in the notice of revocation, and it said it in the Administrative Appeals Office decision, which is the final agency decision here. So that's what's before the Court today, not the consular officer's initial suspicions, but whether the agency abused its discretion in determining that REM failed to meet its burden on either one of those requirements. Now, both of these requirements are necessary in order to get the visa. So even if the Court finds that the agency acted arbitrarily and capriciously with respect to one of the requirements, the Court still must uphold the agency decision if it agrees that the agency acted reasonably with respect to at least one of the requirements. And I'd like to go briefly through the two requirements. The first is that the job must be in a specialty occupation, and the regulations set out four ways that an employer can show that the job is in a specialty occupation, but essentially they all come down to the same thing, that the job requires a bachelor's degree in the specialty or the equivalent of a bachelor's degree in the specialty. And here the agency found that REM failed to meet this requirement because it didn't provide any meaningful description of the job duties. The only description of the job duties that was before the agency was that the agency knew that this was a job for a computer-aided design specialist to develop computer programs related to product design and development of proprietary solar electric generators and energy converters. So basically all the agency knew was this was a computer programmer job in a particular field. That's not a meaningful enough description of the duties to determine whether a bachelor's degree is required. It might be or it might not be. And what the agency found from the beginning in the notice of intent to revoke and through the additional steps was that the evidence does not show that the job could not be performed by someone without a bachelor's degree. And REM throughout the process failed to show otherwise. It's important to note that the burden of proof was solely on REM to show that. And that enough is that one failure to prove that one requirement is enough to uphold the agency's decision here. The second requirement is that the beneficiary, Ms. Georgieva, is qualified to hold the job. And that's where the diploma comes in. And there REM did attempt to provide some additional evidence, unlike with the first prompt. But the agency rejected the evidence, and it gave reasons for rejecting it. There was the University of Chicago email. As the agency pointed out, there was no evidence establishing that that professor had the expertise to render that type of evaluation. In addition, he didn't offer a conclusive opinion. Instead he said, I think that will be the equivalence which will be possible to certify. That's not really a conclusive opinion at all. And finally, the email didn't append or describe the transcript that he was looking at. Okay. Let me understand. I'm having a little trouble with the legal effect of the consular officials turning down, disapproving, revoking the revocation, the original revocation of the visa. The basis for the, for that revocation was discounted as not valid. Is that correct? That's not exactly correct, Your Honor, because the consular officer was not the one who revoked the visa. The consular officer sent it back to CIS, the agency, and said you should take another look at this. Okay. It was on the, but it was on the, it was after the consular official sent it back. And so the agency then, what happened? So the agency then issues a notice of intent to revoke and sets out all of the reasons that it intends to revoke the visa, intends to revoke, and gives REM 30 days to respond and provide more evidence. And in that notice, it does list all of the consular officer's issues, but it also says you didn't meet requirement one and you didn't meet requirement two. You didn't show that the position is, that the job is qualified as a specialty occupation because you didn't show that the job can't be performed without a bachelor's degree, and you didn't show that Ms. Georgieva met the requirements for performing this job. So from the very beginning, it listed not just the consular officer's suspicions, but the two issues that the agency ultimately found were determinative. Then REM provided some additional information to the agency. The agency reviewed it and revoked the visa. Then REM appealed, and the agency's administrative appeals office reviewed that. And in that, that's the final agency determination. In that determination, the administrative appeals office said, we're going to discount the consular officer's suspicion. There's not enough evidence to prove that. But we are upholding the revocation because you didn't meet the two requirements. But if the consular office hadn't sent it back in the first place, we wouldn't be here, would we? That's correct. And the basis for sending it back was not valid. Everybody seems to agree on that. So I guess that's the argument that's being made here, that I'm not sure. Well, we don't agree that the basis was not valid. The agency ultimately found there wasn't enough evidence to support the consular officer's suspicions. But there's certainly nothing wrong with the government having suspicions that there's the visa should not be issued and then taking a closer look at it and determining that under the regulations, indeed, it should not have been issued. That's the reason for the consular officer's involvement in the first place, is to Why? You know, I don't know the answer to that, Your Honor. I don't know the reason for the consular officer to do an interview. I'm sorry, I can't answer that. But there's nothing in the law that says that the government can't have a suspicion for whatever reason that a visa has been improperly issued and then take a look at it and determine whether it was properly issued. Here, the government took a look at it and determined that under the regulations, it was improperly issued. The fact that different types of suspicions might have led to that review doesn't invalidate the review. There's no authority for that whatsoever. Even if the janitor asks them to take another look at it? I don't think there's anything in the law that says that they can't. Again, it's important to remember that the burden of proof is on the employer to show that it's entitled to the visa. So for whatever reason the government has suspicions that it was improvidently issued, there's nothing stopping the government from reviewing that. If the Court has no further questions, the government will submit. Thank you, Your Honors. I think I used all my time. I think you did. I think you're in the red. Okay, thank you. We'll let it go at that. I appreciate it. The case just argued is submitted for decision. We'll hear the next case, which is United States v. Akers.
judges: Schroeder, Farris, Rawlinson